Anthony Lynn SPAIN, Petitioner,

John David Echols, and Bryan Lester Dupler, as Real Parties In Interest, Petitioners,

v.

The DISTRICT COURT OF TULSA COUNTY, State of Oklahoma, Honorable Joe Jennings, District Judge, Respondent.

No. P–94–71.

Court of Criminal Appeals of Oklahoma.

May 26, 1994.

Ordered Published July 7, 1994.

*WRIT OF MANDAMUS TO THE HONORABLE JOE JENNINGS, JUDGE OF THE DISTRICT COURT OF TULSA COUNTY, AND ORDER GRANTING LEAVE TO FILE REPLY BRIEF AND DISSOLVING STAY*

On January 20, 1994, Petitioners requested this Court to assume original jurisdiction in the above-styled cause and grant their petition for alternative writ of prohibition and/or mandamus (the "Petition") and vacate an order of the District Court of Tulsa County in Case No. CF–93–4835 denying a request for a copy of the transcript of the preliminary hearing at public expense. Petitioner Anthony Lynn Spain ("Spain") has been charged, along with a co-defendant, with first degree murder. Spain is represented by the remaining Petitioners, John David Echols and Bryan Lester Dupler (Echols and Dupler, respectively).

As the issue raised concerns the government's obligation to provide costs and servic-

es to indigent defendants, on March 4, 1994, we referred the matter to the Oklahoma Supreme Court for a determination of jurisdiction, pursuant to Okl. Const. art. 7, § 4, since the Supreme Court has, in the past, assumed jurisdiction over similar matters. *See e.g. State v. Lynch*, 796 P.2d 1150 (Okla. 1990). This Court also stayed any further criminal proceedings in Case .No. CF–93–4835 in the District Court until further order of this Court or the Supreme Court.

On May 3, 1994, the Supreme Court held that jurisdiction over the issues raised rests in this Court and transferred the matter to this Court. The same day, Petitioners requested leave to file a reply brief. On May 6, 1994, Spain's co-defendant, Mary Renee Beelman, filed a motion in this cause requesting the modification of the stay so criminal proceedings could be continued against her and she could proceed to trial.

The order at the center of this controversy is the January 6, 1994, order of the District Court denying Spain's request for a copy of the transcript of his preliminary hearing at public expense. At the hearing on this request, the District Judge stated, in considering the question of Spain's indigency, that his "chief concern in this matter pertaining to finances and whether or not the transcript should be paid at public expense is the issue of whether or not the Defendant has friends or relatives who are financially able and willing to assist him." Tr. 2. The District Judge acknowledged that Spain's Affidavit in Forma Pauperis complied with the *Rules of the Court of Criminal Appeals*, 22 O.S.1991, Ch. 18, App.

At the hearing, testimony was given to the effect that Spain's parents have paid Echols and Dupler fifteen thousand dollars and have obligated themselves to pay additional attorney fees, ranging from an additional ten to forty thousand dollars. Spain's parents are attempting to raise the sums required to pay his attorneys by mortgaging a house; they do not know whether they will be able to pay his attorneys in full. Spain's parents are unwilling to pay the other expenses involved in his defense. Tr. 4–15.

At the conclusion of the hearing, the District Judge denied Spain's request and acknowledged that the burden of paying for the transcript, a cost of approximately eight hundred dollars, would fall either on Spain's parents or his attorneys. Tr. 15–16. The District Judge indicated that Spain is personally indigent. Tr. 3 and 17. Spain's Affidavit in Forma Pauperis indicates that he is unemployed and has a negative net worth. O.R. 13–16. Spain's personal indigency is without dispute.

Spain's attorneys, Echols and Dupler, have ordered the transcript of the preliminary hearing and have obligated themselves to pay the cost thereof; they seek a writ of mandamus from this Court directing the District Court to provide reimbursement.

The question before us is whether an accused, who is personally indigent, is entitled to transcripts at public expense when a third party has retained counsel on behalf of the accused but refuses to pay any other expenses.

■ In *Bruner v. State*, 581 P.2d 1314, 1315 (Okl.Cr.1978), we recognized that:

> If having retained counsel is legal justification for denying a transcript at state expense, then it would be equally justifiable to deny a court-appointed counsel on the ground that the defendant had been able to pay for the transcript. But clearly a person should not be forced to choose between having the assistance of counsel and having a transcript. . . .

Under the guidelines this Court established in *Bruner* for the determination of the reasonableness of a defendant's request for transcripts at public expense, the District Court was required to take into consideration all of the factors in Spain's Affidavit in Forma Pauperis. *Id.* at 1316. Spain, of course, bears the burden of proving his indigency. *Id.*

We note that Spain's Affidavit in Forma Pauperis indicates that his parents had previously given him financial assistance in his case by obligating themselves to pay attorney fees but were unwilling to provide further assistance.

■ Clearly, Spain is entitled to a transcript at public expense if indigent, even

though he has, through his parents, been able to retain counsel. We turn to the question of whether the financial resources of his parents should be determinative of Spain's status as an indigent person, given his parents' unwillingness to provide further financial assistance.

In *McMillion v. State*, 742 P.2d 1158, 1159–60 (Okl.Cr.1987), the defendant's family posted his bond. Subsequently, the trial court revoked its previous order granting the defendant a copy of his preliminary hearing transcript at public expense and further ordered the defendant to pay the costs of the transcript. Upon rehearing of the matter, the trial court found that the defendant had "had the money available to pay for a copy of the transcript 'but chose to put it on his bail.'" *Id.* at 1160.

On appeal from the defendant's subsequent conviction, we concluded that the denial of a free transcript to an indigent violated equal protection—"[i]n a criminal trial, a State can no more discriminate on account of poverty than on account of religion, race, or color." *Id.* In other words, whether the defendant could make bail had "no bearing on his status as an indigent." *Id.*

■ Similarly, the fact that Spain's parents were willing and able to retain counsel on his behalf has no bearing on Spain's status as an indigent, given his parents' unwillingness to provide any further financial assistance. Moreover, the District Judge indicated that Spain is personally indigent. Tr. 3 and 17. Once the District Judge exercised his discretion and found that Spain was personally indigent, Spain became legally entitled to receive a copy of his preliminary hearing transcript at public expense. Further, Echols and Dupler are entitled to reimbursement for funds advanced to obtain a copy of this transcript.

**IT IS THEREFORE THE ORDER OF THIS COURT** that the District Court is hereby **DIRECTED** to provide Petitioner Anthony Lynn Spain with a copy of his preliminary hearing transcript at public expense and is further **DIRECTED** to provide for the reimbursement of Petitioner John David Echols and Petitioner Bryan Lester Dupler for all sums expended by them to obtain a copy of said transcript. Further, Petitioners are hereby **GRANTED** leave to file the Reply Brief submitted to this Court on May 3, 1994. Finally, this Court's March 4, 1994, stay of further proceedings in Case No. CF–93–4835 in the District Court of Tulsa County is hereby DISSOLVED.

**IT IS SO ORDERED.**

/s/ Gary L. Lumpkin
GARY L. LUMPKIN
Presiding Judge

/s/ Charles A. Johnson
CHARLES A. JOHNSON
Vice Presiding Judge

/s/ Charles S. Chapel
CHARLES S. CHAPEL
Judge

/s/ Reta M. Strubhar
RETA M. STRUBHAR
Judge